UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SENIOR LIFESTYLE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-02457-JMS-MJD |
| ) | |
| KEY BENEFIT ADMINISTRATORS, INC., ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on *Defendant's Renewed Motion to Enforce the July 6, 2018 Discovery Order and for Sanctions and Other Relief* [Dkt. 133]. Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Dinsmore, was "designated . . . to conduct any necessary hearings and issue a report and recommendation regarding the proper disposition of Defendant's Motion[.]" [Dkt. 211.] For the reasons set forth below, the Magistrate Judge recommends Defendant's motion be **GRANTED**.

**I. Background**

Plaintiff Senior Life Style Corporation ("SLC") entered into a contract with Defendant Key Benefit Administrators, Inc. ("KBA"), which was in effect beginning January 1, 2015 and terminating December 31, 2015. [Dkt. 1 at 3.] This Administrative Services Agreement ("ASA") between the parties named Defendant KBA as "the Plan Supervisor, for the purpose of establishing the terms and conditions under which KBA agrees to provide administrative services with respect to the Employer's Employee Welfare Benefit Plan [of SLC] . . . ." [Dkt. 1-1 at 1.]

1

Pursuant to the contract, KBA agreed to provide the following services: "administering claims for benefits, paying claims for benefits from SLC assets, and coordinating the purchase of stop-loss insurance." [Dkt. 1 at 2.] SLC claimed that on November 6, 2015, it discovered its "stop-loss coverage had been cancelled due to KBA's failure to pay owed premiums to the stop-loss insurance carrier" and that KBA contended the reason it discontinued stop-loss payments on behalf of SLC was due to SLC's failure to adequately "make sufficient payments to KBA." [Dkt. 1 at 1.] SLC filed its lawsuit against KBA on May 8, 2017 and asserted that KBA had: 1) breached its fiduciary duty under ERISA Sections 502(a)(3); 2) breached the ASA; and 3)[1] committed gross negligence for failure to submit payments to the stop-loss carrier and failure to notify the stop-loss carrier "that SLC had reached the reimbursement threshold . . . ." [Dkt. 1.]

KBA served its requests for production in October 2017 and April 2018; these requests sought information "related to SLC's financial condition and use of plan assets during the time relevant to the parties' dispute[,]" to which SLC raised relevancy objections. [Dkt. 121 at 1.] KBA attempted to resolve the discovery dispute by meeting and conferring with SLC. [Dkt. 121 at 1.] On May 10, 2018, the parties appeared in-person for a discovery conference with the Court. [Dkt. 79.] At the conclusion of the discovery conference, the Court authorized the Defendant to file a motion to compel Plaintiff's responses to its First and Second Requests for Production. [Dkt. 79 at 1.] On May 25, 2018, KBA filed its *Motion to Compel Plaintiff's Responses to Requests for Production* [Dkt. 82]; the Court granted this motion in part,[2] in its July

---

[1] The Court notes SLC's Count III, for gross negligence, was dismissed with prejudice pursuant to the Court's March 5, 2019 Order [Dkt. 194].

[2] The Court notes SLC was given a deadline of July 20, 2018 to "fully respond to KBA's First Request for Production Nos. 3, 4, 16, 17, 18, 19, and 23, and KBA's Second Request for Production Nos. 2 and 6[.]" [Dkt. 93 at 16.] On August 9, 2018, the Court issued its Supplemental Order on Motion to Compel [Dkt. 104] (granting in part) to address SLC's production of

6, 2018 Order [Dkt. 93]. On August 23, 2018, KBA filed its *Motion to Enforce the July 6, 2018 Discovery Order and for Relief Under FRCP 37(b)(2)(A)* [Dkt. 107]; the Magistrate Judge held a hearing on this motion on September 6, 2018. [Dkt. 108.] At this time, KBA's motion was denied as premature:

> based upon Defendant's counsel's admissions that Defendant [had] no specific evidence regarding any documents or other information that [were] being withheld. However, Defendant was authorized to conduct discovery regarding Plaintiff's efforts in responding to Defendants discovery requests and the Court's order on the motion to compel, and this order [was] without prejudice to Defendant's resubmission of the motion in the event evidence of improper conduct is discovered.

[Dkt. 123 at 2.] SLC filed its *Renewed Motion to Enforce the July 6, 2018 Discovery Order and for Sanctions and Other Relief* on October 19, 2018. [Dkt. 133; Dkt. 134.] The Magistrate Judge held a hearing on Plaintiff's renewed motion on November 15, 2018 and issued the following preliminary orders: 1) SLC "shall complete its production of documents in compliance with the Court's July 6, 2018 Order on Motion to Compel . . . a[s] quickly as possible"; 2) KBA "shall cooperate in that production as needed"; and 3) "SLC shall report to the Court when that production is complete." [Dkt. 172.] The Court authorized the filing of the parties' supplemental briefs regarding KBA's renewed motion, once this additional production of SLC documentation was completed and reviewed by KBA. [Dkt. 217.]

On May 31, 2019, KBA filed its *Supplemental Brief in Support of Defendant's Renewed Motion to Enforce Discovery Order and Request for Sanctions and Other Relief*[3] [Dkt. 219]. SLC filed its supplemental *Response in Opposition* on June 10, 2019. [Dkt. 229-1.] Thus,

---

documents corresponding to its privilege log. Having substantially prevailed on its *Motion to Compel*, the Court later awarded KBA the bulk of its requested fees in bringing the motion. [Dkt. 201.]

[3] On April 11, 2019, SLC's counsel, Seyfarth Shaw LLP ("former counsel"), moved to withdraw from this matter; the Court granted these motions on April 12, 2019. [Dkt. 213.] KBA's current

KBA's renewed motion is now ripe for the Court's consideration.

## II. Legal Standard

A court's authority to sanction parties under Federal Rule of Civil Procedure 37 applies in those instances where a party has failed to comply with a court order, though this order need not be "a formal order"; rather, "[a]n agreement or promise between the parties to conduct discovery in a particular fashion may constitute an order." *Blasius v. Angel Auto.*, No. 3:13-CV-46-JVB-CAN, 2014 WL 12783287, at *3 (N.D. Ind. Apr. 3, 2014). Further, the Court has "an inherent power to sanction a range of litigation abuses-including discovery abuses-to ensure the orderly and expeditious disposition of cases." *Armstrong v. Amstead Indus., Inc.*, No. 01 C 2963, 2004 WL 1497779, at *2 (N.D. Ill. July 2, 2004). The Court has "broad discretion" when considering imposition of sanctions "but any sanction imposed must be 'proportionate to the circumstances surrounding a party's failure to comply with discovery rules.'" *Deere v. Am. Water Works Co., Inc.*, 306 F.R.D. 208, 224 (S.D. Ind. Mar. 26, 2015) (quoting *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996)).

## III. Discussion

The Court begins its analysis by discussing SLC's violation of the Court's July 6, 2018 discovery Order. The Court notes that this dispute centers on the existence and content of SLC's financial documentation that reflects its financial performance between January 1, 2015 and June 30, 2016. Among other discovery requests, KBA's First Request for Production No. 23 is integral to KBA's defense of the case. KBA's RFP No. 23 sought the following discovery from SLC:

---

counsel, Barnes and Thornburg, LLP ("counsel") has completed the supplemental briefing on behalf of SLC regarding this issue before the Court.

4

> REQUEST NO. 23 – Any and all documents related to SLC's financial performance during the relevant time period, including documents that reflect or relate to concerns about the occurrence of declining financial performance, less than projected financial performance, liquidity problems and/or shortfalls in available operating capital.

[Dkt. 93 at 11.] The Court expressly rejected SLC's boilerplate objections as to relevance, proportionality, the large breadth of the request, and undue burden. [Dkt. 93 at 12.] The Court's July 6, 2018 Order found that the financial information requested was "[a] central theme of KBA's defense . . . that SLC failed to make required payments to KBA due to cash flow issues that required SLC to use employee payments related to the Plan for other purposes." [Dkt. 93 at 12.] Though it expressly acknowledged the request was broad in nature, the Court found the relevance of this information to "greatly outweigh[ ] the burden of its production" and ordered SLC to fully respond to KBA's RFP No. 23 by July 20, 2018. [Dkt. 93 at 12, 16.] By the Court's deadline, SLC produced a minimal eight documents "including its 2016 financial audit report" leaving KBA suspicious that more responsive documents than what was originally produced did exist. [Dkt. 135 at 11.] At the September 6, 2018 hearing the Magistrate Judge warned SLC and its former counsel about the gravity of noncompliance as follows:

> I think the answer at this stage is pretty clear. It doesn't mean it's the end of the inquiry. I think my orders on the motion to compel are crystal clear. I overruled the objections and **I ordered SLC to provide complete and unequivocal responses to them.** You have represented they have, Mr. Schwartz-Fenwick. I have a right to rely upon that. The defendant has a right to rely upon that. If that representation is not true and they can demonstrate it, **I most likely . . . I would likely recommend a sanction**, dismissal of this case. So SLC wants to be crystal clear when it makes that representation that it is, in fact, true.

[Dkt. 134-2 at 37-38.] (emphasis added). Ultimately, the Court relied upon the contentions of SLC's former counsel that compliance had taken place in denying KBA's first motion for sanctions; yet, the door remained open for KBA to substantiate its arguments of noncompliance

5

to "uncover [actual] evidence that . . . these are not complete and unequivocal responses[.]" [Dkt. 134-2 at 37.]

KBA contends that it conducted further discovery after the September 6, 2018 hearing, where it raised the issue of the lack of completeness in SLC's financial document production, and that there is now evidence of SLC's "withholding of numerous documents that relate to SLC's financial performance during the period beginning January 1, 2015 and ending June 30, 2016." [Dkt. 135 at 2-3.] Further, KBA asserted SLC did not inform KBA of the existence of additional responsive documents until September 27, 2018, **well after** both the hearing and the Court's production deadline. [Dkt. 135 at 2.] KBA concisely illustrates the timeline of SLC's production of responsive documents in its initial brief.[4] [Dkt. 135 at 11.] Of particular concern to the Court were the entries after the October 5, 2018 close of fact discovery that culminated in a notification from SLC to KBA that "over 500 GB of emails collected in September 2018 includes 2,750,000 documents, including 725,000 documents hitting on search terms [SLC later] identified . . ." as responsive to the Court's discovery Order. [Dkt. 135 at 12.] Equally troubling is SLC's former counsel's September 12, 2018 email that following the September 5, 2018 Rule 30(b)(6) deposition [Dkt. 135-14] of SLC's Chief Financial Officer, Steven Hippel, "SLC reviewed additional hard-copy files" and found relevant executive team meeting agendas and meeting notes that were also responsive to KBA's discovery requests. [Dkt. 134-8.] The Court notes the Rule 30(b)(6) deposition occurred **before the initial hearing** before the Court where SLC's former counsel stated SLC had fully complied with the Court's discovery Order. [Dkt. 135 at 8.]

---

[4] The Court will not specifically address each stage of SLC's continued document production but does acknowledge that significant production by SLC occurred **after** the July 20, 2018 deadline and **beyond** the Court's November 15, 2018 hearing on KBA's renewed motion.

6

**A. Violation of Court's July 6, 2018 Order**

The Court notes some changing rationale, between the Plaintiff's initial and supplemental briefing in opposition to KBA's renewed motion,[5] for SLC's failure to produce all responsive documents pursuant to the Court's Order.  Each rationale, however, invokes common themes of innocent or inadvertent "mistakes" and lack of clear "communication" between the Defendant and former counsel.  [Dkt. 142; Dkt. 179; Dkt. 220.]  In compliance with the Court's production deadline, SLC argued it produced an audited financial statement for 2016 inclusive of the audit information from 2015, SLC's bank records for the health insurance account, and interrogatory responses that explained its positive financial status for 2015 and 2016.  [Dkt. 142 at 4.]  At this time, SLC contends it believed it had fully complied.

After Mr. Hippel's September 2018 deposition revealed additional responsive documents, SLC's compliance argument begins to fall apart.  In Mr. Hippel's October 4, 2018 deposition, more responsive documents came to light including SLC's "H Drive."  [Dkt. 142 at 9.]  Seyfarth stated that "Mr. Hippel did not provide these documents earlier due to his misunderstanding of the scope of First RFP and the Court's order."  [Dkt. 142 at 9.]

At the November 15, 2018 hearing, Seyfarth admitted, via Mr. Schwartz-Fenwick that SLC had not fully complied with the Court's Order due to reliance on what turned out to be an incomplete pull of documents "from the client."  When the Court inquired as to why, current

---

[5] The Court notes Plaintiff's initial Response was drafted by SLC's former counsel and the subsequent supplemental briefing was drafted by SLC's current counsel.  [Dkt. 141; Dkt. 220.]  However prior to Seyfarth's withdraw from the case, both former and current counsel appeared at the November 15, 2018 hearing on the motion, though Christopher Bayh, of Barnes and Thornburg, predominately argued on behalf of SLC.  [Dkt. 179.]

7

counsel, Mr. Bayh, stated that "the CFO [Mr. Hippel] in this process had two brain lapses. One is failing to understand what was needed . . . . It just was a breakdown, and we did not communicate that message as well as it should have been communicated, and we[6] regret that lapse." [Dkt. 179 at 5.] The Court finds that the explanation that Mr. Hippel – a CFO with the obligation to know the operations of his company—had multiple memory lapses leading to noncompliance with the Court's Order is not credible. In supplemental briefing, SLC's current counsel argued that SLC "relied on Seyfarth's advice about compliance with the order." [Dkt. 229-1 at 2.] An example of such advice leading to the minimal documents initially produced is reflected in Mr. Schwartz-Fenwick's email to Mr. Hippel on July 9, 2018,[7] which explicitly states "[t]o comply with [the Court's order] we will need to produce:" 1) monthly statements for the account holding plan assets within the relevant period; 2) communications to plan participants explaining payroll deductions and premiums; 3) "DOL form 5500s for the health plan" and SLC's Summary Annual Reports for 2015-2016; and 4) documents "related to SLC's financial performance" during the relevant period. [Dkt. 221-2.] To clarify this fourth category, former counsel stated "ideally we could provide either quarterly or annual statements of SLC's financial condition for the time period." [Dkt. 221-2.] The timeline of SLC's continued failure to produce all responsive documents progressed as Seyfarth's email correspondence to Plaintiff in July and August 2018 sought more responsive documents to address KBA's disputes from

---

[6] The Court is unclear who the collective "We" is in this statement. For purposes of the discussion and in light of SLC's supplemental brief, the Court will infer this refers to Seyfarth's communication with Mr. Hippel.

[7] As an aside, this email was sent three days **after** the Court granted KBA's motion to compel. One wonders how SLC objected to the original discovery requests on the grounds of **over breadth, proportionality, and undue burden** if SLC's counsel had not previously communicated to SLC what documents would be encompassed by such request and received information back from SLC regarding the volume of such information in its possession. [*See* Dkt. 82-1 at 24.]

meet and confer discussions. [Dkt. 221-4; Dkt. 221-5.] In this email correspondence, Seyfarth goes so far as to call RFP. No. 23 a "fishing expedition" that would need supplementation due to "the lack of limiting language in the Court's Order." [Dkt. 221-4 at 3.]

    The Court will briefly address the problematic generation of ESI results that were populated in this case. On August 10, 2018, KBA inquired about SLC's ESI document collection in relation to compliance with the Court's Order. [Dkt. 219 at 7.] On August 13, 2018, Seyfarth stated it "worked with SLC's IT personnel across all employees' files (including back-up tapes) for communications and documents related to the plan at issue and KBA." [Dkt. 134-6.] KBA challenged this document pull method on August 16, 2018 stating this method limited results to an initial pull for documents that had occurred in March 2017 and did not include "SLC's financial and other matters that go beyond the plan at issue and KBA" as required by the Court's Order. [Dkt. 219 at 8.] On September 18, 2018, Hippel "discovered a hard copy of an email that was responsive to First RFP 23" but was not included in the document production by SLC. [Dkt. 142 at 7.] From this single email, Seyfarth alleged it learned of the existence of this misunderstanding that "the field of documents it had searched was comprised of only documents it requested and received from SLC in 2016, and . . . that this 2016 set of documents was limited" to only KBA or related equivalents as search terms. [Dkt. 219-3 at 6.] The Court acknowledges KBA's argument and notes the **inconsistency** in Seyfarth's claimed knowledge of the limited search terms; such inconsistency is even further corroboration for the Court to determine SLC failed to produce responsive documents in a timely manner in violation of the Court's Order. Whether Seyfarth knew of the limited terms earlier or later, does not change the Court's finding that Plaintiff's counsel's argument that noncompliance due to mistake falls absolutely flat in its effort to persuade the Court.

The Court's July 6, 2018 discovery Order was abundantly clear in its requirement that SLC produce "any and all documents" related to SLC's financial status and performance during the relevant time period in 2015 and 2016. No matter the version of the blame game, pointing the finger at Mr. Hippel, Seyfarth, or a *combination of the two* does not negate SLC's failure to comply with production requirements of a discovery order. The Court finds both the client and counsel are responsible for the diligent compliance with requirements of the Court. SLC "ordered the pull of all documents, from which it produced over 2.2 million documents **after the November 15 hearing**[.]" [Dkt. 229-1 at 9.] (emphasis added). One or two overlooked documents in the course of discovery production may be forgiven as a harmless error, but the sheer volume of the documents alone that SLC failed to produce by July 20, 2018 cannot constitute a mere mistake. **Therefore, the Court finds SLC violated the Court's July 6, 2018 discovery Order as it pertains to KBA's RFP No. 23, and as such, sanctions against SLC are warranted.**

### B. SLC's Documents: Financial Health & Cash Flow Transfers

KBA contended that not only did SLC fail to comply with the Court's Order but it made misrepresentations regarding its financial status and performance. [Dkt. 135 at 2.] KBA asserted "SLC was far from financially sound in late 2015, when it was delinquent in its payments to KBA" and that cash flow problems were a contributing factor to SLC's inability to pay KBA and other vendors. [Dkt. 135 at 3.] KBA argued that "[s]ince September 6, [2018] SLC has produced hundreds of additional spreadsheets reflecting its poor financial performance during the relevant time period." [Dkt. 135 at 2.] Additionally, KBA argued that SLC has "siphoned monies originally deposited into its health insurance account—monies that included plan assets derived from employee payroll deductions—to other corporate accounts to cover

other corporate expenditures." [Dkt. 135 at 3.] KBA asserted these financial issues provided "an incentive" for SLC to withhold these documents from KBA and as such represent sanctionable conduct. [Dkt. 135 at 19.] To evidence KBA's contentions in its supplemental brief, KBA outlined a table of excerpts from SLC's internal emails from November 5, 2015 to January 19, 2016 as examples of SLC discussing "cash shortfalls," "cash management strain," "wiring funds," "the cash flow situation" and so on. [Dkt. 219 at 18-19.] Another compiled table referenced failure of payment to SLC vendors. [Dkt. 219 at 20.] SLC maintains that both KBA and its acquired financial expert, Rebekah Smith, misunderstand SLC's finances, that KBA only marked a total of 18 documents as indicative that SLC's financial activity was negative, and that SLC remained profitable.

While the Court finds KBA's arguments surrounding SLC's financial performance and its interpretation of the referenced electronic documents discussing SLC's financial information interesting, it is by no means conclusive. The Court will not engage in analyzing the financial health of SLC and particularly notes that financial failure and cash flow problems can be two very different concepts. Likewise, the parties have an explicit dispute over the ability SLC had to transfer funds from the health insurance account containing plan assets to other corporate accounts to pay unrelated expenses. [Dkt. 229-1; Dkt. 219.] Determination of these financial issues, though potentially relevant, is directly related to the merits of the case and the defenses asserted by KBA. Therefore, despite prior comments that may have suggested otherwise, the Court will not factor such factual contentions into its determination of the appropriateness of sanctions against SLC.

## IV.  Sanctions[8]

The Court finds the SLC has violated the July 6, 2018 Order by failing to produce literally millions of financial and other documents responsive to KBA's discovery requests.  The Court acknowledges the pathway to KBA's receipt of these documents and the process of SLC's production of these materials well after the Court's discovery Order has been nothing short of a painful "tooth-pulling" exercise.  However, the imposition of sanctions must be apportioned to fit the magnitude of the offending party's conduct.  *See, e.g., G & S Metal Consultants, Inc. v. Continental Cas. Co.*, No. 3:09-CV-493-JD, 2013 WL 4950802, at *3 (N.D. Ind. Sept. 10, 2013) (When considering an award of sanctions "judges must 'take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms.'") (quoting *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 398 (1st Cir. 1990).  While the Court does not condone the litigation conduct of SLC or its former counsel, a sanction of dismissal is not an appropriate remedy in this instance.  *See, e.g., Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 WL 2371597, at *35 (S.D. Ind. May 18, 2015) (quoting *Montano v. City of Chi.*, 535 F.3d 558, 563 (7th Cir. 2008)) ("A district court has broad discretion in its choice of sanction, but any sanction imposed pursuant to the Court's inherent powers 'should be proportionate to the gravity of the offense.'")  Sanctions are utilized to accomplish goals to "remedy prejudice to a party," "reprimand the offender," and "deter future parties from trampling upon the integrity of the court."  *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (quotation omitted).  The Magistrate Judge's recommendation meets these goals.

---

[8] The Court notes that KBA is advocating for full dismissal of this case with prejudice.  Due to the nature of maintaining brevity in this Report and Recommendation, the Court will not expressly outline each of the lesser sanctions requested by the Defendant; rather, these will be incorporated from KBA's brief.  [Dkt. 135 at 3.]

KBA seeks dismissal of this lawsuit with prejudice.  [Dkt. 219 at 35.]  To impose such a powerful sanction is both an "extreme" and "draconian" remedy to which the Court does not take lightly.  The Court is no stranger to imposing harsh sanctions in circumstances of conduct that is so egregious, no other lesser sanction is appropriate.  *See, e.g.*, *Hunt v. Hubler Chevrolet, Inc. et al*, No. 1:18-cv-01505-RLY-MJD at [Dkt. 104] (Magistrate Judge recommended sanction of default for Defendants' spoliation, perjury, and violation of the Court's discovery order).  The Court has weighed KBA's proposed lesser sanctions but finds no merit to support any preclusion of evidence or adverse inferences requested.  The Court finds the only applicable sanction in its arsenal to address SLC's violation of the Court's prior discovery Order is a monetary one.

SLC asserted it has been prejudiced by SLC's noncompliance as it was left "without [the] financial information that this Court found highly relevant to the parties' claims and defenses . . . [and was] unable to prepare fully for the depositions of SLC's witnesses, which began on August 23, 2018 and concluded on October 4, and dispositive motions, which [were] due on November 2."  [Dkt. 135 at 2.]  The Court finds that now KBA possesses these documents to continue in the litigation.  Moreover, the Court notes that KBA does not allege any specific claims of spoliation among its reasoning for seeking dismissal of this action.

## **CONCLUSION**

Based on the foregoing, the Magistrate Judge recommends the Court **GRANT** *Defendant's Renewed Motion to Enforce the July 6, 2018 Discovery Order and For Sanctions and Other Relief* [Dkt. 133].  **The Magistrate Judge recommends the Court award KBA all reasonable costs and fees it incurred as a result of SLC's violation of the July 6, 2018 Discovery Order, including but not limited to KBA's reasonable attorneys' fees and litigation costs for all work attributable to SLC's failure to comply with the Order, to**

**include the redeposition of any witnesses following SLC's supplemental production. Within fourteen days of a ruling in favor of adopting this Report and Recommendation**, the Magistrate Judge authorizes Defendant to file a motion for such fees with supporting documentation. Should SLC ultimately prevail in the final resolution of this case and be entitled to recover any fees or costs in this matter, **the Magistrate Judge recommends that SLC should not be entitled to the recovery of any fees or expenses associated with any document production that occurred as a result of SLC's failure to comply with the Court's prior discovery Order, to include any fees or expenses associated with the redeposition of any witnesses following SLC's supplemental production. Liability discovery remains open until August 9, 2019, and the Magistrate Judge, by separate order, will authorize KBA to redepose any witness previously deposed in this case**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections **within fourteen days after service** shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 28 JUN 2019

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

14

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.