UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SENIOR LIFESTYLE CORPORATION, )<br>)<br>*Plaintiff*, )<br>)<br>vs. )<br>)<br>KEY BENEFIT ADMINISTRATORS, INC., )<br>)<br>*Defendant*. ) | No. 1:17-cv-02457-JMS-MJD |

## ORDER

Presently pending before the Court is Plaintiff Senior Lifestyle Corporation's ("SLC") Motion to Exclude the Testimony of Rebekah A. Smith, one of Defendant Key Benefit Administrators, Inc.'s ("KBA") proposed witnesses. [Filing No. 357.] SLC seeks to exclude the testimony of Rebekah A. Smith at trial, arguing that her testimony is "otherwise prejudicial and unhelpful." [Filing No. 363 at 1.] For the following reasons, the court **DENIES** the motion.

## I.
### LEGAL STANDARD

Federal Rule of Evidence 104 instructs that "[t]he court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." Fed. R. Evid. 104(a). Federal Rule of Evidence 702 provides that expert testimony is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed R. Evid. 702. A trial judge "must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a

1

preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. . . . Many factors will bear on the inquiry. . . ." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

The Court has a "gatekeeping obligation" under Rule 702, and "must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill. Cent. RR. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)). Put another way, the district court must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Gopalratnam*, 877 F.3d at 779 (emphasis omitted). The Seventh Circuit Court of Appeals "give[s] the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).

## II.
### BACKGROUND

Ms. Smith is a Certified Public Accountant with twenty-four years of professional experience. [Filing No. 367 at 2.] She is also certified in Financial Forensics, and is a Certified Valuation Analyst and a Master Analyst of Financial Forensics. [Filing No. 367 at 2.] KBA provided Ms. Smith's opinion to SLC during discovery disputes that arose from KBA's requests for SLC's financial information, which KBA believed would show that SLC had cash flow issues,

2

which led to SLC's failure to pay its invoices in full and on time.[1]  [Filing No. 363 at 3; Filing No. 367 at 5.]  During the discovery disputes, Ms. Smith reviewed the 2014, 2015, and 2016 audited financial statements and related financial data of SLC's parent company, Senior Lifestyle Holdings, LLC ("SLH").  [Filing No. 363 at 3; Filing No. 367 at 2.]  Ms. Smith explained how to read a company's balance sheet and then she calculated SLH's equity on a book value basis for 2014, 2015, and 2016.  [Filing No. 367 at 6 (citing Filing No. 359 at 21.]  She then explained the concept of a ratio of current assets to current liabilities (known as a "current ratio"), and explained that a company with a current ratio of less than 1.0 is at risk of not being able to meet its obligations as they come due over the next year.  [Filing No. 367 at 6-7 (citing Filing No. 359 at 22).]  She then calculated SLH's current ratio at three different points in time and analyzed the trend in SLH's current ratios.  [Filing No. 367 at 6-7 (citing Filing No. 359 at 22).]  Ms. Smith then analyzed SLH's income statement.  [Filing No. 367 at 7 (citing Filing No. 359 at 23).]  She also analyzed SLH's Statement of Cash Flows and financial statements.  [Filing No. 367 at 7-8 (citing Filing No. 359 at 24-25).]  The conclusion Ms. Smith reached in her analysis of the financial statements was also reached when she calculated the Days of Sales Outstanding metric and Days of Expenses Outstanding metric.  [Filing No. 367 at 8 (citing Filing No. 359 at 25-26).]  Ms. Smith concluded, in part, that SLC had cash flow problems and otherwise was not in good financial health during 2014, 2015, and 2016.  [Filing No. 367 at 10 (quoting Filing No. 359 at 32); Filing No at 2.]

    SLC retained a forensic accountant, Jack Schwager, who opined that "Ms. Smith's characterizations of SLC's financial condition and performance 'do not reflect an analysis of its

---

[1] KBA explains that "[a] central theme of [its] defense has been that SLC failed to pay its KBA invoices on time, as billed[,] not for any of the *post hoc* rationalizations SLC has presented in this lawsuit, but because SLC was experiencing financial difficulties—and, specifically cash flow problems—throughout 2015."  [Filing No. 367 at 5.]

solvency, the adequacy of its capital, or its ability to pay its debts (including those purportedly owed to KBA) as they became due,'" and her opinions "lack sufficient basis, are based on incomplete analysis, and distort or exaggerate [SLC]'s financial condition and SLC's ability to pay any amounts allegedly due to KBA." [Filing No. 363 at 4 (quoting Filing No. 325-1 at 5).] Mr. Schwager concluded that Ms. Smith's analysis "failed to show SLC's financial condition caused non-payment of the billed amounts within KBA's invoices." [Filing No. 363 at 4 (quoting Filing No. 325-1 at 5).]

     Ms. Smith rebutted Mr. Schwager's opinions in Part III of her Expert Report, explaining that: (1) "Mr. Schwager misrepresents the conclusions in the Smith Declaration;" (2) "[a]t no point in the Smith Declaration do[es] [she] state that [she was] performing a solvency analysis nor does the Smith Declaration include any opinions that SLC is insolvent, lacked access to adequate capital to pay purported obligations to KBA as allegedly billed, or was otherwise unable to pay any amount purportedly due to KBA as they allegedly became due;" and (3) "Mr. Schwager's opinion that [her] analyses failed to show that SLC was insolvent, etc. refutes an opinion that [she] did not offer, based on analyses [she] did not perform and did not claim to be performing." [Filing No. 367 at 11 (quoting Filing No. 359 at 7-8).]

### III.
### DISCUSSION

     SLC argues that Ms. Smith's proposed testimony does not satisfy Federal Rule of Evidence 702(a) because it "will not help the trier of fact evaluate the evidence or in determining a fact in issue." [Filing No. 363 at 6.] SLC argues that Ms. Smith's declaration appears to be an attempt to support KBA's theory that SLC did not pay KBA's invoices on time and as billed because it did not have the money to do so, but it does not come close to making such a conclusion. [Filing No. 363 at 7.] SLC notes that Ms. Smith testified that she was not opining on whether any party

performed or did not perform their obligations under the Agreement, nor would she opine "as to the merit of any defenses asserted by KBA. . . ." [Filing No. 363 at 7 (quoting Filing No. 359-2 at 18).] Further, SLC argues, Ms. Smith even admitted that "there was cash on hand on a consolidated basis to pay KBA." [Filing No. 363 at 7 (quoting Filing No. 359-2 at 32).] SLC contends that this demonstrates that Ms. Smith's opinion will not be helpful at trial, will only confuse and unduly prejudice the jury, and should be excluded. [Filing No. 363 at 7.] SLC further argues that Ms. Smith's methodology is not reliable because she "did not use the principles and methods necessary to 'show that SLC was insolvent, lacked access to adequate capital to pay purported obligations to KBA as allegedly billed, or was otherwise unable to pay any amount due to KBA as they became due.'" [Filing No. 363 at 9 (quoting Filing No. 359-1 at 8).] SLC argues that Ms. Smith's methodology is unclear and her prospective testimony "fails to meet multiple prongs of Rule 702." [Filing No. 363 at 11.]

In response, KBA argues that Ms. Smith's proposed testimony will provide context and a view of SLC's financial position and cash flow in 2015 that can help the trier of fact evaluate SLC's stated reasons for why it failed to pay KBA's invoice on time and as billed. [Filing No. 367 at 13.] KBA notes that SLC's complaint is that Ms. Smith's opinion does not go far enough; she "did not need to conclude that SLC was insolvent," etc. for her testimony to be helpful to give context to the trier of fact. [Filing No. 367 at 13-14.] KBA argues that Ms. Smith's opinion does not have to be dispositive on an ultimate issue for it to be helpful to the trier of fact. [Filing No. 367 at 14.] KBA further argues that SLC has not disputed that Ms. Smith's calculations, metrics, trends, ratios, or industry comparisons are accurate and reliable. [Filing No. 367 at 16.] KBA notes that Ms. Smith explained that her methodology was "reflected in . . . basic accounting books that talk about financial analysis." [Filing No. 367 at 16 n. 8.] KBA argues that SLC's complaints

go to the weight of Ms. Smith's opinion, not to the admissibility of her testimony. [Filing No. 367 at 16-17.] KBA also notes that Ms. Smith's proposed testimony is broader than just her opinions regarding SLC's financial health and cash flow situation. [Filing No. 367 at 17.]

In reply, SLC argues that "KBA cannot avoid the following critical concession [that] . . . there was enough cash on hand on a consolidated basis to pay KBA." [Filling No. 371 at 1 (internal quotations omitted).] SLC argues that Ms. Smith's testimony is neither relevant nor useful to the trier of fact because it does not "connect the dots" to demonstrate causation. [Filing No. 371 at 4.] SLC notes Mr. Schwager's position that Ms. Smith's opinion has several material deficiencies, although SLC does not specify exactly what those problems are. [Filing No. 371 at 7.] SLC argues that "there is not a single aspect of Ms. Smith's opinion that passes muster under Rule 702." [Filing No. 371 at 7.]

Federal Rule of Evidence 702 allows the opinions of witnesses who have the requisite "knowledge, skill, experience, training, or education." The Court finds that Ms. Smith is qualified to provide an expert opinion regarding the financial position and cash flow situation of SLH and SLC. She is a Certified Public Account with over twenty-four years of professional experience, and she has additional certifications in Financial Forensics and Valuation Analysis. She has both the knowledge and the experience to form an opinion as to the financial condition of SLH and SLC, and the Court finds that she is qualified to testify as an expert in this case.

As for reliability of methodology, the Supreme Court in *Daubert* set forth four factors a court may consider when determining an expert witness's methodology is reliable, including: (1) whether the methodology "can be (and has been) tested"; (2) whether the methodology "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; and (4) whether the methodology is generally accepted. *Daubert*, 509 U.S. at 593-94. These factors are

not a "definitive checklist or test," *id.* at 593, and the weight of the factors is dependent on "the particular circumstances of the particular case at issue," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The key focus "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterized the practice of an expert in the relevant field." *Id.* at 152.

    Ms. Smith explained that her opinion was formed using a basic financial analysis method that appears to be commonly used in the field. Although Mr. Schwager asserts that Ms. Smith's observations and conclusions are "flawed," "incomplete," "misleading," or "unreliable," he does not claim that any of Ms. Smith's calculations or methods were generally unaccepted in the field, could not be tested, had a known rate of error, or have not been subjected to peer review. Mr. Schwager only asserts that certain facts should or should not have been included in Ms. Smith's calculations or observations, or that certain factors should have been given more or less weight. Accordingly, the Court finds that the steps Ms. Smith took in reaching her opinion are in line with the general practice in the field and her methodology was sound.

    Finally, even though Ms. Smith stated that "there was cash on hand on a consolidated basis to pay KBA," [Filing No. 359-2 at 32], that does not completely foreclose the theory that SLC was having financial difficulties and chose to short-pay KBA's invoices to save money. Mrs. Smith is not required to definitively state that SLC's financial issues were the sole reason why SLC failed to pay in full and on time for her opinion to be helpful to the trier of fact. Mrs. Smith's proposed testimony helps provide context of what SLC's financial position was at the time and is relevant to the case. Mr. Schwager's critiques of Ms. Smith's opinion can be raised at trial to challenge the weight of her opinion, but his critiques do not make Ms. Smith's opinion unreliable or irrelevant. Accordingly, SLC's Motion to Exclude Testimony of Rebekah A. Smith is **DENIED**.

## IV.
### CONCLUSION

The Court finds that: (1) Ms. Smith's knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) her testimony is based on sufficient facts or data; (3) her opinion is based on reliable principles and methods; and (4) she has reliably applied the principles and methods to the facts of the case. *See* Fed R. Evid. 702. Accordingly, the Court **DENIES** SLC's Motion to Exclude the Testimony of Rebekah A. Smit, [357].

Date: 4/15/2020

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**