UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SENIOR LIFESTYLE CORPORATION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | No. 1:17-cv-02457-JMS-MJD |
| | ) | |
| KEY BENEFIT ADMINISTRATORS, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

# ORDER

On May 8, 2017, Plaintiff Senior Lifestyle Corporation ("SLC") filed a Complaint against Key Benefit Administrators ("KBA"), alleging that KBA breached its fiduciary duty under ERISA Section 502(a)(3), breached the contract it had with SLC, and acted with gross negligence resulting in SLC incurring extra expenses up to $1,000,000. [Filing No. 1 at 6-11.]

On September 23, 2019, SLC filed a Motion for Partial Summary Judgment, [Filing No. 283], in which it argued that it is entitled to partial summary judgment on the issue of KBA's liability under the breach of contract and ERISA claims. In response to SLC's Motion for Partial Summary Judgment, KBA filed a Cross-Motion for Summary Judgment, [Filing No. 304], asserting that it is entitled to judgment in its favor on the claims against it. On April 28, 2020, the Court denied SLC's Motion for Partial Summary Judgment and granted in part and denied in part KBA's Cross-Motion for Summary Judgment. [Filing No. 382.]

On May 27, 2020, SLC filed a Motion for Reconsideration, asking the Court to reconsider its entry of summary judgment in KBA's favor on SLC's ERISA claim. [Filing No. 383.] That motion is ripe for decision.

# I.
## STANDARD OF REVIEW

A "district court possesses the power . . . to alter or amend a judgment after its entry." Fed. R. Civ. P. 59(e) 1946 Committee Notes. Relief under Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)). Rule 59 motions are for the limited purpose of "correct[ing] manifest errors of law or fact or . . . present[ing] newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation and quotation omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedtrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). A Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)). Nor may a party use Rule 59(e) to "rehash previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (internal quotation omitted).

# II.
## BACKGROUND

In 2015—the time period relevant to this action—SLC managed approximately 170 senior living communities across the country. [Filing No. 285-1 at 34-35.] SLC's healthcare plan (the "Plan") for its employees was self-funded by SLC, and SLC was the healthcare plan's sponsor. [Filing No. 305-3 at 4.]

KBA "is a third-party benefit administrator that supervises the operating of self-funded welfare benefits plans sponsored by the employers, such as SLC." [Filing No. 305-2 at 6.]

SLC and KBA entered an Administrative Services Agreement for Medical Plan Administration (the "Agreement"), whereby KBA agreed "to provide administrative services with respect to [SLC's] Employee Welfare Benefit Plan . . . in consideration of the payment by [SLC] of the fees and the agreements recited" in the Agreement. [Filing No. 284-1 at 2.]

As third-party administrator, KBA coordinated the purchase of stop-loss insurance coverage with Companion Life Insurance Company ("Companion"). [Filing No 305-4 at 11; Filing No. 314-2 at 122-205.] SLC was the policyholder of the stop-loss insurance policy. [Filing No. 314-2 at 122-205.]

KBA was responsible for billing and collecting fees from SLC and remitting those collected fees to the appropriate parties, including stop-loss insurance premiums to Companion. [Filing No. 305-4 at 7-8.] If a premium was late and was not paid during the thirty-day grace period, the stop-loss insurance policy would "terminate without further notice retroactive to the date for which premiums were last paid." [Filing No. 314-2 at 151.]

In the fall of 2015, it was brought to Companion's attention that several of the stop-loss policyholders from which KBA was collecting premiums were not paying their bills. [Filing No. 305-1 at 12.] It was determined that SLC failed to make an October 2015 payment and the thirty-day grace period had passed, so SLC was sent a termination notice on November 6, 2015. [Filing No. 285-8 at 22; Filing No. 285-8 at 24.]

SLC filed a Complaint against KBA, alleging that KBA breached its fiduciary duty under ERISA Section 502(a)(3), and that the breach resulted in the stop-loss policy being terminated.

[Filing No. 1 at 6-11.] The parties filed cross-motions for summary judgment, each arguing that it was entitled to judgment in its favor on SLC's ERISA claim. [Filing No. 283; Filing No. 304.]

To prevail on its ERISA breach of fiduciary duty claim, SLC was required to establish that KBA's alleged breach resulted in a cognizable loss to the Plan. *See Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009). The Court, however, found that the alleged damages were instead incurred by SLC, not the Plan. [Filing No. 382 at 29.] The Court explained that "[a]lthough SLC attempts to characterize the damages as ones suffered by the Plan by arguing that the stop-loss policy was an integral part of the Plan, this argument ignores key evidence demonstrating that SLC is seeking relief on its own behalf, not on behalf of the Plan." [Filing No. 382 at 29.] The Court pointed to SLC's statements about the termination of the policy "causing SLC damages," [Filing No. 382 at 29 (quoting Filing No. 287-1 at 1)], and to the stop-loss policy documents themselves identifying the "Contractholder" as "Senior Lifestyle Corporation" for one policy (for the Minimum Essential Coverage ("MEC")), *see* Filing No. 314-2 at 129, and "Senior Lifestyle Corporation – MVP" for the other policy (for the Minimum Value Plan ("MVP")), *see* Filing No. 314-2 at 168, [Filing No. 382 at 29]. The Court found that there was "no evidence that KBA's alleged actions . . . or its alleged failure to advise SLC that its stop-loss policy was going to be terminated led to 'a cognizable loss to the plan.'" [Filing No. 382 at 29 (quoting *Sharp Electronics*, 578 F.3d at 512).] The Court held that because the damages that formed the basis of SLC's Complaint—namely, the termination of its stop-loss policy and the money that SLC had to expend as a result—were clearly damages incurred by SLC, not the Plan, SLC's ERISA breach of fiduciary claims failed, and KBA was entitled to summary judgment on those claims. [Filing No. 382 at 30.]

### III.
#### DISCUSSION

In its Motion for Reconsideration, SLC argues that KBA did not meet its burden on summary judgment because it did not provide the Court with evidence showing that the stop-loss policy was a contract between Companion and SLC, and that only SLC—not the Plan—was injured. [Filing No. 383 at 1.] SLC points to one of KBA's previous filings, which, according to SLC, "showed SLC's *Plan* ('Senior Lifestyle Corporation – MVP' . . .) was the contract holder." [Filing No. 383 at 3 (emphasis in original) (citing Filing No. 35-1).] SLC argues that any distinction between SLC and its Plan "raises form over function." [Filing No. 383 at 3.]

In response, KBA asserts that SLC's position in is inconsistent with the record, and the Court was correct in drawing the distinction between SLC's assets and the Plan's assets. [Filing No. 387 at 1.] KBA points to the following evidence in the record that, it argues, supports the Court's finding that SLC was the injured party: (1) a provision in the Agreement stating that "[s]top-loss insurance protects self-funded plan sponsors, such as SLC, from heavy losses caused by unexpectedly high total Plan claims," [Filing No. 387 at 2 (quoting Filing No. 287-1 at 3)]; (2) the deposition testimony of Angela Cromer wherein she stated that SLC was the insured, [Filing No. 387 at 2-3 (citing Filing No. 305-5 at 13-15)]; (3) the stop-loss policy itself, [Filing No. 387 at 3]; and (4) the deposition testimony of SLC's Rule 30(b)(6) witness, who stated that the stop-loss policy identified SLC as the contract holder, [Filing No. 387 at 3]. KBA maintains that it is undisputed that the stop-loss policy would have paid benefits to SLC, not to the Plan, and that this undisputed fact was included in SLC's Complaint and is, therefore, a "binding admission[]." [Filing No. 387 at 4 (quoting *Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995).] KBA argues that SLC's motion should be denied because it is an attempt "to create a dispute out of an

undisputed fact," and "it rehashes a legal issue (on grounds contrary to settled law under ERISA)." [Filing No. 387 at 7.]

In reply, SLC argues that KBA "had the burden to show that SLC, and not SLC's employee benefits Plan, was the stop-loss insurance contract holder, and that only SLC would receive the benefits of that policy, or suffer harm when it was wrongfully terminated." [Filing No. 393 at 1.] SLC notes that KBA did not plead as an affirmative defense that SLC lacked standing to pursue its ERISA claim, nor did it state that SLC was not the real party in interest. [Filing No. 393 at 1.] SLC challenges KBA's reliance on the 30(b)(6) witness testimony, noting that there are two stop-loss policies: one that identifies the contract holder as "Senior Lifestyle Corporation," (which was discussed in KBA's response) and one that identifies the contract holder as "Senior Lifestyle Corporation – MVP," which was confirmed by the 30(b)(6) witness. [Filing No. 393 at 2.] SLC argues that KBA did not identify any evidence showing that the Plan was not injured when the stop-loss policy was terminated, and SLC suggests that the Plan would have been injured because the policy was SLC's source of funding for the Plan. [Filing No. 393 at 3.] SLC contends that ERISA did not intend to leave a Plan without a remedy where the fiduciary breached its duties but the employer made the Plan whole, which SLC argues would be the result if the Court adopts KBA's position. [Filing No. 393 at 3.]

The Court disagrees with SLC's argument that KBA failed to meet its burden on summary judgment. The evidence in the record demonstrates that SLC, not the Plan, was the policyholder of the stop-loss policy. Specifically, in support of its Cross-Motion for Summary Judgment, KBA submitted the stop-loss policy documents identifying the "Contractholder" as "Senior Lifestyle Corporation." [Filing No. 314-2 at 129; Filing No. 314-2 at 168.] Accordingly, the termination

of the stop-loss policy would cause damage to SLC as the policyholder. This conclusion is supported by: (1) several admissions by SLC found in the record, including the allegations in SLC's Complaint; (2) deposition testimony of multiple witnesses; and (3) documents like the Agreement. This evidence establishes as a matter of law that the Plan was not the insured. Because the Plan was not the policyholder, it was not party injured by the termination of the stop-loss policy. For that reason, SLC's ERISA claim fails because there is not "a cognizable loss to the plan." *Sharp Electronics*, 578 F.3d at 512.

SLC has not demonstrated that the Court committed a manifest error of law or fact, nor has it presented newly discovered evidence requiring reconsideration. Having found that SLC has not presented any grounds under Rule 59(e) to set aside or vacate the Court's entry of judgment in favor of KBA on SLC's ERISA breach of fiduciary duty claim, the Court **DENIES** SLC's Motion for Reconsideration, [Filing No. 383].

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** SLC's Motion for Reconsideration, [383].

Date: 7/6/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

7