UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SENIOR LIFESTYLE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02457-JMS-MJD |
| | ) | |
| KEY BENEFIT ADMINISTRATORS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR ATTORNEYS' FEES**

This matter is before the Court on the Motion for Attorneys' Fees filed by Defendant Key Benefit Administrators, Inc. ("KBA"). [Dkt. 322.] For the reasons and to the extent set forth below, the motion is **GRANTED**.

**I. Background**

Liability discovery in this case closed (for the second time) on August 9, 2019.[1] The dispositive motions deadline was September 16, 2019. On September 11, 2019, SLC filed a

---

[1] SLC's response to the instant motion contains the following footnote:

> SLC does not understand KBA's statement that August 20 was "eleven days *after* the extended discovery deadline had expired." Dkt. 322 at 2 (KBA's emphasis). The discovery period ended on August 23. That period was originally scheduled to end on August 9, but the Court—on KBA's motion—extended that deadline to August 23, albeit for the limited purpose of conducting depositions. See Dkt. 242 at 1 (KBA motion); Dkt. 245 (order granting same).

[Dkt. 344 at 1 n.1.] SLC's claim of confusion is risible. The liability discovery deadline was August 9, 2019. The Court did not extend that deadline; rather, the Court gave the parties permission to conduct certain depositions after that deadline. The Court's order made that abundantly clear when it stated that "the parties are hereby granted leave to complete the liability

motion seeking an extension of the impending dispositive motion deadline until 28 days after the Court ruled on a motion to compel that SLC intended to file. [Dkt. 255.] SLC reported that it had identified certain deficiencies in KBA's discovery responses that it believed warranted reopening discovery and deferring summary judgment briefing until the additional discovery was completed. The Court granted the motion in part, extending the dispositive motion deadline to September 23, 2019, in order to permit the parties to brief and the Court to resolve SLC's motion to compel. [Dkt. 274.]

In the motion to compel, which SLC filed on September 12, 2019, SLC raised five issues. *See* [Dkt. 259]. Two of them turned out to be non-issues: SLC thought KBA had improperly omitted portions of a spreadsheet that it had produced and had failed to include certain redactions on its privilege log. SLC was mistaken on both counts. The other three issues also were resolved in KBA's favor. SLC argued that KBA had failed to search for and produce certain responsive documents; however, SLC's arguments ignored the agreement the parties had reached with regard to how KBA would search for responsive documents.[2] SLC also argued that it was entitled to conduct additional discovery based on information it had recently received when, in

---

depositions contemplated in the parties' July 15, 2019 Supplemental Joint Report on the Status of Discovery [Dkt. 239] after the August 9, 2019 deadline for the completion of liability discovery, so long as such depositions are completed by no later than August 23, 2019." [Dkt. 245 at 1-2.]

[2] SLC states that the Court ruled that "SLC was bound to search terms and other parameters that it agreed to, through prior counsel, in 2018." [Dkt. 344 at 3.] That is not entirely accurate. What the Court ruled was that KBA had not behaved improperly by limiting its search for and production of responsive documents as agreed upon by the parties. The Court expressly recognized that SLC could have conducted follow-up discovery, but it failed to do so during the discovery period. *See id.* at 12 ("SLC knew or should have known that the critical documents in question were not contained in KBA's document production long ago; at that point, pursuant to the parties' agreement, SLC could have asked KBA to search for and produce anything relating to those documents in KBA's raw data (or that of its vendors).").

fact, SLC had had the relevant information for some time and thus readily could have completed the follow-up discovery before the discovery deadline. Accordingly, SLC's motion to compel was denied in its entirety.

## II.  Discussion

Federal Rule of Civil Procedure 37(a)(5)(B) provides that where, as here, a motion to compel discovery is denied, the court

> must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Here, SLC argues both that no fees should be awarded because its motion was substantially justified and, in the alternative, that the amount of fees requested by KBA is unreasonable. The Court will address SLC's arguments, in turn, below.

### A.  Substantial Justification

A motion to compel was "substantially justified," such that an award of fees is not appropriate, when the positions taken by the movant were such that reasonable people could disagree about the proper outcome of the motion. *See Tecnomatic, S.P.A., v. Remy, Inc.*, 2013 WL 6665531, at *1 (S.D. Ind. Dec. 17, 2013) ("Substantial justification exists if the Motion posited a 'genuine dispute' or if reasonable people could differ as to the appropriateness of the contested action.") (citing *Fogel v. Bukovic*, No. 11 C 1178, 2011 WL 2463528, at *3 (N.D. Ill. June 20, 2011)). SLC acknowledges this general standard, but spends several pages arguing that fee awards pursuant to Rule 37(a)(5)(B) are, and should be, "relatively rare" and limited to situations that involve "abuse" by the movant. The "abuse" referred to in the cases cited by SLC is "the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute

3

exists," which the Rule is designed to deter. *See* Advisory Committee Notes to 1970 Amendment to Rule 37. Thus, the requisite "abuse" is present when a motion to compel advances unreasonable arguments. The cases cited by SLC are consistent on that point. *See, e.g.*, *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (holding that "substantially justified" in the context of fee awards under the Equal Access to Justice Act means "justified to a degree that could satisfy a reasonable person"); *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) ("'Conduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action.'") (quoting *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011)); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 330 (N.D. Ill. 2005) ("Whether the Marsulex deposition notices were timely under the circumstances was reasonably debatable, and thus, is substantially justified within the meaning of Rule 37(a)(4)." (citing 7 Moore's Federal Practice, § 37.23 [2] (2004)).

     Applying this standard to the instant case, it is clear that SLC's arguments in its motion to compel were not substantially justified. SLC's position that KBA had failed to produce certain documents or provide certain information until the very end of the discovery period was simply incorrect, as was SLC's argument that KBA's reliance on the agreement reached by the parties regarding how KBA would search for documents was somehow improper. As set forth in detail in the Court's ruling denying the motion to compel, SLC could have, and should have, sought the additional discovery at issue during the discovery period. Its attempt to shift the blame for its own failures onto KBA was not substantially justified; it is the very type of unreasonable motion that Rule 37(a)(5)(B) is meant to deter.

SLC, pointing to the fact that courts have "broad discretion" in ruling on discovery disputes, argues that it would have been "well within the Court's discretion" to grant its motion and therefore an award of fees would not be appropriate. [Dkt. 344 at 7] (citing *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)). On this point, SLC points to cases in which courts have granted motions to compel that were filed after the discovery deadline,[3] despite the general rule that such motions should be denied as untimely. But the cited cases demonstrate only that there are, in some cases, justifications for the filing of an untimely motion to compel that warrant excusing the untimeliness. *See, e.g.*, *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 236 (N.D. Ill. 2000) (in granting untimely motion to compel, distinguishing cases in which "the party seeking to compel after the close of discovery offered no persuasive justification for the untimely motion").

In this case, SLC did not provide any such justification. Rather, SLC blamed the timing of its motion on KBA, suggesting in its brief in support of its motion to compel that KBA was guilty of misconduct because it had failed to produce responsive documents in a timely manner. *See, e.g.*, [Dkt. 259 at 1] (SCL "just received in discovery information, which should have been produced long ago, which may be crucial to the case, which SLC previously did not know – and could not know – existed and which may be crucial to its claims"); *id.* at 4 ("the newly-produced document revealed that the earlier-produced document not only contained unexplained

---

[3] SLC also cites *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 1673563 (N.D. Ill. June 8, 2007), as "exercising discretion to grant a late-filed motion to compel." In fact, the court **denied** the motion to compel in that case because the movant "offered no explanation either for the lateness of the motion or for the relevance of the information it seeks," and in so ruling noted that "[b]eing solely responsible for the unexplained untimeliness of the Motion to Compel, [the movant] cannot be heard to complain of the situation of which it is the efficient cause." *Id.* at *5, *7.

5

redactions, but crucial columns had been entirely cropped"); *id.* at 6 n.1 ("That KBA did not produce relevant data in its possession, but only information existing in document form, if true, raises significant questions about the integrity of KBA's production."). But, as set forth in the Court's ruling denying the motion to compel, SLC was mistaken in many respects about what information it had been provided by KBA and failed to point to any information that it had actually "just received" that justified its untimely motion. The Court may have had discretion to excuse SLC's late motion if SLC had demonstrated that the lateness was justified, but it did not have the discretion to accept SLC's factually inaccurate explanation for the motion's timing and its attempt to blame KBA for its own failure to review the discovery it had received from KBA and conduct the follow-up discovery it now believes to be crucial.[4]

---

[4] SLC's citation to *Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2011 WL 4538089 (S.D. Ind. Sept. 29, 2011), is particularly off the mark. In that case, Magistrate Judge Lynch (not Judge Magnus-Stinson, as cited by SLC) denied a motion to stay discovery while a motion to dismiss was pending, but found that an award of fees to the prevailing party would not be appropriate because the losing party "advanced case law to support its argument that a pending motion to dismiss directed to all claims against it, including the claims that support federal jurisdiction, provides good grounds for a stay of discovery," or, "[p]ut another way, this magistrate judge believes it would have been well within her discretion to grant St. Vincent's request for a stay." *Id.* at *3. To say that SLC's suggestion that *Castrillon* involved "similar circumstances" to the instant motion is strained would be an understatement. In addition, SLC's claim that the Court in *Castrillon* denied the motion "in part" because it "came 'months' late" is misleading. Judge Lynch did not say that the motion to stay was filed "months late," but rather noted that it was filed "months after [the moving party] filed its motion to dismiss and after the court entered its case management order approving the parties' jointly proposed plan" and that "[t]hat plan contain[ed] ordinary and typical discovery deadlines, and [the moving party] proposed it without any suggestion that a stay would be appropriate pending the decision on its motion and without any indication that the parties had discussed a stay in conferring about the plan." *Id.* at *2. Unlike here, there was no deadline involved in *Castrillon*; the question decided by Judge Lynch was the purely discretionary question of whether, given all of the relevant circumstances, the case was "one where a motion to dismiss makes a stay of all discovery appropriate." *Id.*

> Finally, SLC makes the following argument:
>
> [T]his situation more resembles a motion granted and denied in part, covered by Rule 37(a)(5)(C), than a wholly denied motion, under subsection (a)(5)(B).
>
> . . .
>
> Here, KBA produced documents throughout the the [sic] time period beginning September 10 for which KBA seeks fees. *See* Dkt. 322 at 9; Dkt. 322-2 at 9. KBA produced two documents on September 10, and another document on September 11. Exs. 3 & 4. Then, on September 17—five days after SLC filed its motion to compel—KBA produced two more documents. Ex. 5.
>
> Disputed issues therefore resolved in SLC's favor well into KBA's fee-request period. And SLC's efforts to get relevant documents—for which KBA says it should get fees under Rule 37(a)(5)(B)—resulted in the "requested discovery['s] [being] provided" by KBA, including "after the motion [was] filed." Fed. R. Civ. P. 37(a)(5)(A).
>
> This situation is therefore much more within the ambit of subsection (a)(5)(C), addressing mixed results, than subsection (a)(5)(B). This is especially so given how KBA has framed the issue: starting its fee clock on September 10, two days before the motion's filing and before KBA's three rounds of production noted above. Put more simply, KBA's continued production of documents after the "impasse" its brief describes, Dkt. 322 at 9, further shows that *even KBA* viewed SLC's position as substantially justified. This further supports a finding of substantial justification here, and thus a denial of KBA's fee petition.

[Dkt. 344 at 10-11.] Quite frankly, this argument is absurd.[5] SLC's motion to compel was without merit and thus was denied in its entirety. The result would not have been any different had KBA not produced any documents after it was filed. And the fact that KBA produced some documents during the course of the parties' meet-and-confer period in hopes of avoiding a

---

[5] Equally absurd is SLC's argument that because KBA produced two documents on September 17, 2019, SLC is not entitled to the fees it incurred between September 12, 2019—the date the motion to compel was filed—and September 17, 2019.

motion to compel—which is the entire purpose of the meet-and-confer requirement—in no way suggests that KBA thought the motion to compel would be anything other than meritless.

### B. "Outrageousness" of the Fee Request

Pursuant to Rule 37(a)(5)(B), KBA is entitled to its "reasonable expenses incurred in opposing the motion, including attorney's fees." KBA seeks fees in the amount of $68,756.50, which SLC argues is "many times higher than what courts in this Circuit have awarded for similar motions, and double what one court recently called 'outrageously excessive' for the same work." [Dkt. 344 at 1.] In fact, SLC argues, the amount of fees sought by KBA is so outrageous that it should be rejected wholesale. This argument is based on two false premises.

First, SLC fails to recognize a critical distinction between this case and the cases it cites for the proposition that courts, including the Seventh Circuit, "endorse[] the wholesale rejection of fee petitions when they are grossly unreasonable or 'outrageously excessive.'" [Dkt. 344 at 12.] Each of the cited cases clearly and unequivocally rest upon the fact that the relevant rule or statute made the award of fees "permissive." *See Budget Rent-A-Car Sys., Inc. v. Consol. Equity LLC*, 428 F.3d 717, 718 (7th Cir. 2005) ("When an award of fees is permissive, denial is an appropriate sanction for requesting an award that is not merely excessive, but so exorbitant as to constitute an abuse of the process of the court asked to make the award."); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) ("As previously noted, the applicable statute provides that the court in its discretion May allow counsel fees. As Chief Justice Thomas McKean of Pennsylvania once remarked on a memorable occasion 'may' sometimes means 'won't.'") (quoting *Lynchburg Foundry v. Patternmakers L. of N. Am.*, 597 F.2d 384, 387-88 (4th Cir. 1979)); *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 398 (3rd Cir. 2018)

8

(expressly holding that "where a fee-shifting statute provides a court discretion to award attorney's fees, such discretion includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is outrageously excessive") (citations omitted); *Thomas v. Bannum Place of Saginaw*, 421 F. Supp. 3d 494, 497 (E.D. Mich. 2019) (applying holding of *Clemens* and noting that "in this particular instance, the awarding of reasonable expenses was entirely discretionary, since Plaintiff did not fully prevail on her motion") (citing Fed. R. Civ. P. 37(a)(5)(C)). Here, of course, an award of fees is **mandatory** if the Court finds that the non-movant's position was not substantially justified and no "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). SLC's failure to acknowledge this distinction is troubling.

      Second, SLC's attempt to characterize its motion to compel as the type of "straightforward, uncomplicated" motion involved in *Thomas*, 421 F. Supp. 3d at 494, is disingenuous at best. The motion in *Thomas* involved a typical dispute between parties as to the proper scope of discovery.[6] The briefing of such disputes involves setting out the parties' positions in a concise manner so that the Court may make an informed decision regarding the proper scope of each disputed discovery request. In contrast, SLC's motion in this case, as noted above, included suggestions of impropriety on the part of KBA—assertions that KBA had improperly failed to produce documents during the extensive discovery period in this case. In order to respond—and avoid the possibility of both being sanctioned for discovery violations and the reopening of discovery and resetting of deadlines—KBA was required to review its own

---

[6] Similarly, in each of the cases cited by SLC as examples of courts ordering significantly reduced fee awards, *see* [Dkt. 344 at 18-19], the court emphasized the routine or non-complex nature of the motion.

9

production—much of which had occurred many months earlier—to ensure (and then demonstrate to the Court) that it had not, in fact, failed to comply with its obligations, and to explain the parties' agreements with regard to how discovery was to be conducted and the effect of those agreements on its document production. This required far more extensive briefing, and attorney time, than a typical, straightforward discovery dispute. SLC's motion was a last-ditch effort to convince the Court that it should be given more time to conduct discovery that it could have, and should have, conducted during the very lengthy discovery period in this case.[7] In order to justify its request, SLC attempted to convince the Court that KBA had failed to comply with its discovery obligations. It should come as no surprise to SLC that KBA found it necessary to expend a great deal of energy to demonstrate that no such failure occurred and to avoid the time and expense of the additional discovery sought by SLC.[8]

---

[7] To be clear, while SLC characterizes its motion to compel as seeking a small number of discrete documents and "limited testimony" about two documents, SLC actually requested far more than that. *Cf.* [Dkt. 344 at 2-3] (listing (1) a delinquency report; (2) 260 termination letters; and (3) "limited testimony" about the delinquency report and a "newly produced unredacted spreadsheet" as the relief sought in the motion to compel *with* [Dkt. 267 at 6] (requesting "that the Court order KBA to produce a witness (or witnesses) to provide testimony regarding the [spreadsheet SLC mistakenly believed had been cropped] and the reason it was not produced earlier"); *id.* (requesting "that the Court order KBA to produce the unredacted version and to produce a witness (or witnesses) to provide testimony regarding [another] document and the reason it was not produced earlier"); *id.* at 8 (noting that "newly-produced data and newly-provided information raised many questions" and requesting evidence that KBA be required to produce a witness or witnesses to address those questions, including "the source and meaning of the new information"); *id.* at 9-10 (arguing that, in addition to producing the delinquency report, "KBA should also be compelled to produce internal discussions about that report, if they exist" and that "SLC will [also] need testimony from KBA regarding the report's generation, circulation and use and thus requests that KBA be compelled to produce a witness or witnesses to testify on those topics").

[8] For these same reasons, the Court rejects SLC's argument that KBA is seeking "massive, windfall fees" and that this constitutes "other circumstances" that would "make an award of expenses unjust" pursuant to Rule 37(a)(5)(B).

### C. SLC's Specific Objections to the Fee Request

"[T]he 'starting point in a district court's evaluation of a fee petition is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate.'" *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016) (quoting *Divane v. Krull Elec. Co.,* 319 F.3d 307, 317-18 (7th Cir. 2003)). SLC does not take issue with the hourly rates billed by KBA's attorneys, and the Court finds those rates to be reasonable. SLC does advance several arguments related to the number of hours for which KBA seeks reimbursement. Each of SLC's arguments is addressed, in turn, below.

*1. Fees incurred for pre-motion work*

Local Rule 37-1(a) requires that parties who have a discovery dispute to "confer in a good faith attempt to resolve the dispute" and, if that is unsuccessful, to "contact the chambers of the assigned Magistrate Judge to determine whether the Magistrate Judge is available to resolve the discovery dispute by way of a telephone conference or other proceeding prior to counsel filing a formal discovery motion." As required by this rule, SLC's counsel requested a telephone conference with the undersigned via an email sent on September 10, 2019, to the undersigned's courtroom deputy. SLC's counsel reported that the parties had been attempting to resolve a discovery dispute "for three weeks" and had "reached an impasse." [Dkt. 322-1 at 2.] Counsel further noted that the issue was "time sensitive" because the documents were "necessary to permit SLC to complete its summary judgment motion," which was due in six days. *Id.* Based on the fact that the parties had reached an impasse and SLC was seeking permission to file a motion to compel as of September 10, 2019, KBA seeks reimbursement of its fees starting on that date.

11

SLC argues that the clock for a fee award may not start until the motion is filed. It bases this argument on the language of Rule 37(a)(5)(B), which provides for fees incurred "in opposing the motion" and on *Lifetime Prod., Inc. v. Russell Brands, LLC*, No. 1:12-CV-00026-DN-EJF, 2016 WL 5349728, at *2 (D. Utah Sept. 23, 2016), and cases cited therein, in which the court found that the prevailing party in a motion to compel "should not recover for time spent in good faith meet and confer efforts, including drafting and reviewing correspondence and preparing and partaking in meet-and-confer calls." SLC treats this as a hard-and-fast rule; it is not. As this Court has found previously, there are circumstances in which time spent prior to the filing of a discovery motion are properly included in a fee award under Rule 37. *See Rackemann v. LISNR, Inc.*, 2018 WL 3328140, at *6 (S.D. Ind. July 6, 2018) (noting that "federal courts have often allowed fees for meeting and conferring to be included in awarded attorney fees").

The Court finds such circumstances here. At the point that SLC reported to the undersigned that the parties had reached an impasse and SLC was seeking leave to file a motion to compel, the work expended by KBA to address the dispute was work done to "oppose the motion." In fact, very little of the work during this time period involved meeting and conferring with SLC; rather, the work was done to prepare KBA to respond to SLC's motion to compel, which was inevitable at that point.[9] This work is properly included in the fee award.

---

[9] Some work during this time period also related to SLC's motion for extension of the dispositive motion deadline until after the motion to compel was resolved, which is appropriately included in the fee award because KBA's response to that motion required it to address the discovery dispute that was at the heart of both that motion and the motion to compel. Thus, while SLC argues that it was unreasonable for KBA to bill "nearly 40 hours and $20,000 on a response to a five-and-a-half page extension motion—over $3,500 and seven hours per page, on an *extension* brief," [Dkt. 344 at 17], that argument ignores the fact that the extension motion was inextricably intertwined with the issues raised in the motion to compel. Accordingly, the work done to

12

However, as SLC points out, some of the work in question relates to the documents that KBA agreed to produce as part of the meet and confer process. The Court finds that this work cannot reasonably be included in work done to oppose the motion to compel. Accordingly, the Court will disallow that work, which amounts to $2,808.50 [Dkt. 344-7 at 2] (rows 2 and 6).[10]

*2. Overstaffed and Overworked*

SLC next argues that "KBA staffed and worked the underlying tasks beyond what courts find reasonable," [Dkt. 344 at 16], and asks that the Court reduce KBA's fee request by eighty percent as a result. SLC objects to the fact that KBA "used six timekeepers" who "billed simultaneously, throughout the fee-request period, and on the same tasks." *Id.* The Court agrees with SLC's general premise; it would normally be unreasonable to use so many lawyers to address a discovery dispute and to bill for numerous discussions between lawyers. However, KBA's wholly accurate description of the relevant events demonstrates why it was not unreasonable in this instance:

> When SLC began directing its discovery requests to KBA on August 20, 2019, the parties were at the end of a second round of fact witness depositions in which they conducted *nine* depositions between them from July 31, 2019 to August 21, 2019. SLC's already-extended dispositive motion deadline was less than a month away, on September 16, 2019. In other words, the parties were *a day* from completing fact discovery and nearly ready to complete their respective summary judgment motions, almost a year after they had initially begun the summary judgment process.
>
> SLC's September 2019 discovery motions, and the work KBA expended to try to avoid them, compounded this flurry of activity and added substantially to KBA's

---

respond to the motion for extension also was work necessary for KBA's response to the motion to compel.

[10] SLC identifies additional billing entries that it asserts do not relate to responding to the motion to compel, *see* [Dkt. 344 at 15], but the Court disagrees. Entries such as "[w]ork on responding to discovery issues raised by SLC" and "oversee the identification of records at issue" are directly related to preparing a response to SLC's motion.

>workload. All of the briefing at issue in this fee petition took place on a highly compressed schedule. SLC filed its motion for extension of time to file its summary judgment motion on September 11. [Dkt. 255.] KBA had less than a day's notice that it had to respond by September 13. [Dkt. 257.] By the time KBA's response to that motion was due, SLC had already filed its motion to compel, to which KBA owed a response by September 17. [Dkt. 263.]
>
>Put another way, SLC's untimely discovery requests came at a time when the parties' counsel were already devoting their full attention to other aspects of the case: the resolution of depositions for which the Court had *already* granted a limited extension of the second fact discovery period; and the rapidly approaching dispositive motion deadline. SLC added substantially to that tornadic environment by making persistent discovery demands on KBA and then filing two unjustified discovery motions in quick succession, which imposed overlapping, compressed briefing deadlines on KBA. For purposes of assessing KBA's motion for attorneys' fees, this context is critically important.

[Dkt. 348 at 9] (emphasis in original). As previously discussed, SLC's motion was not the "simple motion to compel" that SLC characterizes it as; it was a motion that called into question the "integrity of KBA's production" and sought to reopen discovery and further delay the resolution of a case that had already seen substantial delays. The Court finds that KBA has satisfied its burden of demonstrating that its staffing of its response to the motion to compel and the work that was performed was reasonable under the very compressed schedule and other particular circumstances of the case at that time.

### 3. Fees for the Fee Motion

Finally, SLC argues that it was unreasonable for KBA to seek over $17,000.00 for worked related to the instant fee motion. In support of its argument, SLC points to cases in which the Seventh Circuit has found that it is appropriate to consider "the comparison between the hours spent on the merits and the hours spent on the fee petitions" in order to determine whether the fees requested for preparing a fee petition are reasonable. *See Spegon v. Catholic*

*Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999) (citing *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir. 1988)). In *Spegon*, the Seventh Circuit noted:

> The plaintiff's attorneys in *Ustrak* devoted fifteen minutes to preparing their fee petition for every hour spent litigating the merits. . . . We found the amount of time and effort devoted by counsel to the pursuit of fees to be excessive and, this "reinforc[ed] our impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Id.* at 988. Accordingly, we disallowed two-thirds of the hours expended on the fee petitions and still considered that allowance a generous one in comparison to *Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th Cir.1988), "where the prevailing party submitted a bill for only 1.6 hours for the preparation of his request for an award of attorney's fees." *Ustrak,* 851 F.2d at 988.

*Spegon*, 175 F.3d at 554. The court reinforced that "the relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case," and affirmed the district court's reduction of the number of compensable hours for the fee petition from approximately twenty-five to 1.6. *Id.*

KBA fails to address this precedent in any way; rather, its entire reply to SLC's arguments with regard to the fees it seeks related to the instant motion is as follows:

> Finally, SLC challenges the amount of work KBA has expended or will expend in briefing its fee request. SLC ignores that KBA filed its fee petition only after SLC rebuffed KBA's efforts to resolve the fee dispute in compliance with Local Rule 7-1(g)(1) (and that those efforts also took time). Those meet-and-confer efforts also resulted in KBA reducing the fees KBA ultimately claimed in its fee petition, from $77,301.50 to $68,756.50. Once again, SLC's arguments for avoiding a fee award seek to punish KBA for engaging in the meet-and-confer process in good faith.

[Dkt. 348 at 18.] Accordingly, the Court finds that KBA has failed to demonstrate that its fee request with regard to it motion for fees—which, unlike the response to the motion to compel,

was not complex—is reasonable. Like the Court in *Ustrak*, the Court will reduce those fees by two-thirds; accordingly, the Court will disallow $11,449.00 of the $17,173.50 sought by KBA.[11]

### III. Conclusion

For the reasons set forth above, KBA's motion for attorney fees [Dkt. 322] is **GRANTED** and KBA is awarded fees in the amount of $54,499.00 ($68,756.50 minus the $14,257.50 disallowed by the Court), plus the reasonable fees expended by KBA on its reply brief in support of the instant motion.[12] The parties are directed to confer and attempt to agree upon that additional amount; if they cannot agree, KBA may file a motion seeking those fees **within 21 days of the date of this Order**.

SO ORDERED.

Dated: 6 JUL 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[11] The Court has utilized that calculation provided by SLC, which KBA does not dispute. *See* [Dkt. 344 at 19] (identifying "[Dkt. 344-7] at rows 42-44, 46-47, 49-53, 55-93 (totaling 37.5 hours and $17,173.50)" as relating to the fee petition).

[12] The Court notes that these fees might reasonably be more than those allowed for the initial brief, in light of the substantial number of issues raised in SLC's response brief.

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.